FILED
2017 MAR 31 PM 2: 42
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | CASE NO. 5:17 CR 120 |
| | ) | JUDGE NUGENT |
| v. | ) | JUDGE  MAG. JUDGE BAUGHMAN |
| | ) | |
| KIMBERLI E. HIMMELL, | ) | Title 18, Sections 1344, and 641, |
| | ) | United States Code |
| Defendant. | ) | |

The United States Attorney charges:

### GENERAL ALLEGATIONS

At all times material to this Information, unless otherwise indicated:

1.  Defendant KIMBERLI E. HIMMEL ("HIMMEL"), resided in Massillon, Ohio, and owned and operated Netwide Title Agency, Inc. ("Netwide"), located at 3711 Lincoln Way East, Massillon, Ohio 44647, and incorporated it under the laws of the State of Ohio in 2003.

1

2. General Title Insurance Company ("General Title"), located at 24262 Broadway Avenue, Cleveland, Ohio 44146, was Netwide's underwriter pursuant to an agency agreement between General Title and Netwide since in or around 2002. As Netwide's underwriter and pursuant to the agency agreement, General Title was responsible for auditing Netwide to ensure that it was in compliance with the terms and conditions of the agency agreement.

3. As a title agency licensed and operating in the State of Ohio, Netwide was required to open and maintain an Interest On Trust Account ("IOTA") in order to receive, hold and distribute monies related to real estate transactions in escrow for a limited period of time. Monies in an IOTA are not allowed to be comingled with the title agency's other bank accounts, such as its operating account, or with the title agent's personal accounts.

4. Netwide established an IOTA at Huntington National Bank ("HNB") with an account number ending in 72176, and an operating account ending in 8872. HIMMEL also opened and maintained a personal checking account ending in 8869.

5. HIMMEL controlled and managed Netwide's IOTA and operating account, as well as her personal checking account.

6. The lenders relied on HIMMEL and Netwide to prepare accurate and truthful settlement statements, or HUD-1s, to receive and hold in trust the loan proceeds wired from the lenders, and to distribute the loan proceeds according to the HUD-1s approved by the parties and lenders, including the payoff of any pre-existing mortgages on the property in order to secure the new lender in the 1st lien holder position.

2

7. On or about October 22, 2007, Netwide, at the direction of HIMMEL, began instructing all lenders doing business with Netwide as a title agency and utilizing its escrow services to wire all incoming lending proceeds to the bank account ending in 8869 – HIMMEL's personal bank account.

8. HIMMEL then used the deposited funds for her own personal use and operational expenses of Netwide without disclosing to the lenders that she was not holding the funds in escrow as she represented she would.

9. In addition, in an effort to conceal her misuse of the lenders' funds, HIMMEL voided and re-issued Netwide checks in order to make it appear to the lenders that the funds were issued out of the IOTA.

10. HIMMEL closed at least nineteen real estate transactions wherein Netwide received escrow funds from the new lenders, and failed to pay and/or caused to be released the prior owner's pre-existing mortgage as contemplated by the parties to the real estate transaction, as well as the new lender.

11. PNC Bank ("PNC"), Nationstar Mortgage, LLC ("Nationstar"), 1st Ocwen Loan ("Ocwen"), Deutsche Bank ("Deutsche"), Bayview Loan ("Bayview"), RBS Citizens Bank ("Citizens"), Wells Fargo Bank ("Wells Fargo"), J.P. Morgan Chase ("Chase"), Select Portfolio Servicing ("Select"), Fifth Third Bank ("Fifth Third"), and Third Federal Savings & Loan ("Third Federal") were financial institutions as defined in 18 U.S.C. § 20, either because their deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"), or they were a mortgage lending business or an entity that makes in whole or in part a federally related mortgage loan.

12. The Federal Housing Administration ("FHA"), a part of the U.S. Department of Housing and Urban Development ("HUD"), provided mortgage insurance on loans made by FHA-approved lenders. FHA mortgage insurance provided lenders with protection against losses on their mortgage loans because FHA would pay a claim to the lender in the event of a homeowner's default. As such, these loans must have met certain FHA requirements to qualify.

13. The Federal Home Loan Mortgage Corporation ("Freddie Mac") is a government-sponsored enterprise chartered by the United States Congress in 1970 to provide liquidity, stability, and affordability to the U.S. housing market. To accomplish these goals, Freddie Mac purchases conforming loans soon after originations from primary lenders, such as banks, as an investor and the lenders then service the loans for Freddie Mac. This increases the cash available to those lenders who are then able to issue additional mortgage loans.

14. Freddie Mac was the investor in the property located at 24172 Rushmore Drive, Richmond Heights, Ohio, which was serviced by PNC Bank. Freddie Mac was also the investor in the property located at 10071 Hickory Ridge Drive, Brecksville, Ohio, which was serviced by Nationstar Mortgage. Finally, Freddie Mac was the investor in the property located at 7679 Ann Arbor Drive, Cleveland, Ohio, which was serviced by Wells Fargo Bank.

## COUNTS 1 - 18

### (Bank Fraud - 18 U.S.C. § 1344)

The United States Attorney further charges:

15. The factual allegations of in the General Allegations, paragraphs 1 through 14, of this Information are re-alleged and incorporated by reference herein.

16. From on or about December 19, 2012, through on or about August 28, 2014, in the Northern District of Ohio, Eastern Division, Defendant KIMBERLI E. HIMMEL did knowingly execute and attempt to execute a scheme and artifice to defraud the lenders listed in the table below, and to obtain money and property owned by and under the custody and control of these lenders by means of false and fraudulent pretenses, representations, and promises as described above in the amounts listed in the table below:

| Count | Seller | Address | City | Lender | Date of Purchase | Amount Wired |
|---|---|---|---|---|---|---|
| 1 | M.M. | 24172 Rushmore Drive | Richmond Heights | PNC | 8/5/2013 | $179,486 |
| 2 | T.D. | 7164 Fieldmont Street NW | North Canton | Nationstar | 12/19/2012 | $109,247 |
| 3 | J.G. | 480 East 300th Street | Willowick | Ocwen | 8/29/2013 | $62,491 |
| 4 | R.H. | 9979 Johnny Cake Ridge | Concord | Bayview | 11/29/2013 | $51,641 |
| 5 | M.B. | 10715 Buckingham Place | Concord | Citizens | 3/31/2014 | $373,750 |
| 6 | D.P. | 15360 Scarlet Oak Trail | Strongsville | Wells Fargo | 8/28/2013 | $243,098 |
| 7 | R.R. | 13651 Auburn Road | Newbury | Chase | 1/21/2014 | $180,895 |
| 8 | B.M. | 7075 Brightwood Drive | Concord | Select Portfolio | 12/30/2013 | $150,126 |
| 9 | Equity Trust | 3672 Grafton Road | Brunswick | Nationstar | 5/8/2014 | $54,698 |
| 10 | S.O. | 250 Franks Avenue | Wadsworth | Ocwen | 11/25/2013 | $114,860 |
| 11 | R.K. | 16734 Shurmer Road | Strongsville | Select Portfolio | 12/18/2013 | $212,049 |
| 12 | R.B. | 585 Birch Hill Drive, Unit 6 | Medina | Wells Fargo | 4/9/2014 | $75,962 |

5

| 13 | J.R. | 6615 Stratford Road | Painesville | Wells Fargo | 7/21/2014 | $120,892 |
| 14 | T.F. | 230 South Monre Street | Millersburg | Ocwen | 4/4/2014 | $107,834 |
| 15 | A.A. | 7679 Ann Arbor Drive | Parma | Wells Fargo | 5/30/2014 | $79,603 |
| 16 | C.K. | 169 East Center Road | Akron | Ocwen | 6/17/2014 | $187,766 |
| 17 | K.H. | 10071 Hickory Ridge Drive | Brecksville | Nationstar | 8/28/2014 | $216,234 |
| 18 | C.M. | 3006 Mathers Way | Twinsburg | Third Federal | 8/5/2014 | $249,471 |

17. As a result of HIMMEL's fraudulent conduct, the lenders, as well as the sellers listed above suffered losses.

18. As Netwide's underwriter, General Title was contractually obligated to make the lenders that were not properly paid at the time of closing by Netwide whole, and General Title paid the outstanding loan amounts held by the first lien holders. In total, General Title reimbursed the lenders in the amount of approximately $2,111,014.

19. However, because General Title issued a cancellation letter to Netwide a few hours before the closing on the property located at 10071 Hickory Ridge Drive, Brecksville, Ohio, Nationstar was not made whole, and is foreclosing on the property causing a loss to both the seller and the buyers.

All in violation of Title 18, United States Code, Section 1344.

## COUNT 19

## (Theft of Government Funds - 18 U.S.C. § 641)

The United States Attorney further charges:

20. The factual allegations of in the General Allegations, paragraphs 1 through 14, of this Information are re-alleged and incorporated by reference herein.

21. In or around April, 2013, Cuyahoga County granted federal Neighborhood Stabilization Program ("NSP") funds to the City of Berea, Ohio, to acquire and demolish a vacant foreclosed house located at 747 Longfellow Avenue, Berea ("Longfellow Property"), and build a new house on this property and sell it to an eligible family.

22. NSP funds are provided and administered by the United States Department of Housing and Urban Development ("HUD"), an agency of the United States.

23. In or around May, 2014, the City of Berea completed the building of a new house on the Longfellow Property, secured an eligible family to purchase the house, and sold the property. As such, the City of Berea was entitled to receive NSP income in the amount of approximately $152,000 at the time of closing.

24. However, on or about May 30, 2014, HIMMEL and Netwide failed to disburse the proceeds from the sale to the City of Berea and, instead, HIMMEL retain the funds for her personal use.

25. From in or around April, 2013, through on or about May 30, 2014, in the Northern District of Ohio, Eastern Division, Defendant KIMBERLI E. HIMMEL, in a continuing course of conduct did embezzle, steal, purloin, and knowingly convert to her use, property of the United States exceeding $1,000 in value belonging to the United

7

States Department of Housing and Urban Development, an agency of the United States, to wit: Neighborhood Stabilization Program funds in the amount of approximately $152,000.

All in violation of Title 18, United States Code, Section 641

ROBERT E. BULFORD
Chief, Akron Branch